**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:14-cv-00656-RJC-DSC**

| | |
|---|---|
| JOSEPH DI BIASE, JOHN PRODORUTTI, DAVID BRASS, RON BEEGLE, DAVID BOBCOCK, and CARL VAN LOON, as individuals, on behalf of themselves and all persons similarly situated, and INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, <br><br> Plaintiffs, <br><br> vs. <br><br> SPX CORPORATION, <br><br> Defendant. | **ORDER** |

**THIS MATTER** comes before the Court on Plaintiffs' Motion for Preliminary Injunction (the "Motion"), Memoranda in Support, and Exhibits, (Doc. Nos. 9, 10, 11, 19), and Defendant's Response in Opposition to Plaintiffs' Motion for Preliminary Injunction and Exhibits, (Doc. Nos. 15 to 18). This matter is ripe for review.

**I.   BACKGROUND**

The facts, summarized here in briefest form, are as follows. Through this action, Plaintiffs seek to bring a class action lawsuit for declaratory relief as well as judgments against Defendant SPX Corporation ("SPX") for its alleged violation of settlement agreements regarding health benefits. In 2001, the UAW along with some retired SPX union members filed two class action lawsuits against SPX alleging it had violated the union members' rights to lifetime health

benefits.[1] (Doc. No. 1 ¶2: Complaint). The parties eventually negotiated a resolution to those suits, which led to the execution and court approval of two settlement agreements in 2004 (the "Settlement Agreements").[2] (Id.). The language at issue in each Settlement Agreement is identical. (Id.). In the Settlement Agreements, SPX agreed to provide certain health care benefits to retirees and surviving spouses for the remainder of their lives. (Id. ¶ 26). The specific benefits differed depending on the residence of the retirees, (Doc. No. 10 at 5-6), and exhibits to the Settlement Agreements set out the principal features of the described plans, including, among other things, co-pays, out-of-pocket expenses, deductibles, payment limits, and coverage. See (Doc. Nos. 1-1 at 47-77; 1-2 at 50-62).

The Settlement Agreements do not mandate that SPX provide a particular plan or type of plan or that SPX provide benefits that are identical to those described in the exhibits to the Agreements. The Agreements merely memorialized the benefit levels upon which the parties had agreed. "The parties understood that SPX would be providing these plans for many decades and would need flexibility in selecting carriers." (Doc. No. 10 at 10). In fact, the Settlement Agreements provided that SPX could change plans, carriers, networks, and providers so long as SPX provided benefits that were "substantially equivalent" to those agreed upon in the Agreements. (Complaint ¶27). The Agreement language, which both parties cite, reads:

> Notwithstanding any other provision hereof, any obligation on the part of SPX to provide coverage under a specified plan or its substantial equivalent shall be deemed to require only that SPX provide coverage which is substantially equivalent in benefits and it shall not be deemed to obligate SPX to provide such coverage through an HMO, to maintain or replicate coverage in a particular network, to provide benefits through a structure under which the patient designates a primary

---

[1] See Di Biase et al. v. SPX Corp. et al., No. 1:01-cv-624-RAE (W.D. Mich.); Pedler et al. v. SPX Corp., No. 1:01-cv-623-RAE (W.D. Mich.).
[2] Amended Final Judgment and Order of Dismissal, Di Biase et al., No. 1:01-cv-624-RAE (W.D. Mich. January 29, 2004), ECF No. 85; Amended Final Judgment and Order of Dismissal, Pedler et al., No. 1:01-cv-623-RAE (W.D. Mich. January 30, 2004), ECF No. 90.

> care physician or otherwise to regulate or affect the manner in which SPX makes such substantially equivalent benefits available.

(Doc. No. 1-1 ¶5.8).

Since the signing of the Settlement Agreements in 2004, SPX has made several plan changes affecting the provision of benefits to the settlement groups without any complaint from the UAW. (Doc. No. 10 at 11-12). In or around early 2014, SPX decided to change the structure through which it provided medical benefits to the settlement members. (Doc. No. 15 at 11-14). Instead of providing a group plan for all Medicare eligible settlement members (those 65 or older), SPX decided to fund a Health Retirement Account ("HRA") for each member, into which SPX would place $5,000 each year to pay for that individual's health and prescription drug coverage.[3] Each individual then uses his or her HRA to buy his or her own insurance policy in the individual Medicare market. SPX engaged OneExchange, which is a private healthcare marketplace that helps individuals find and purchase individual health plans, to assist the members in the transition from the group plan to individual coverage. (Doc. No. 15 at 13). SPX also proposed to reimburse the members for their current amount of Medicare Part B reimbursement, to provide catastrophic drug coverage through a separate HRA, and to give each member previously enrolled in a dental plan an additional $500 per year. (Doc. No. 16 ¶36: Affidavit of Leisa White). The HRA's roll over each year and can be used to pay all medical expenses, except certain pharmacy expenses. (Id.).

On March 18, 2014, SPX sent letters to the UAW and its counsel notifying them that SPX was proposing to change the structure through which it provided medical benefits to the settlement members beginning January 1, 2015. (Id. ¶41). On July 1, 2014, SPX sent a notice to

---

[3] Some settlement members were previously responsible for a portion of their insurance premiums. SPX will fund those individuals' HRA's with a pro-rated stipend. See (Doc. Nos. 10 at 12; 15 at 11-12).

each affected member describing the changes and providing information that the changes would take effect January 1, 2015. (Id. ¶42). On August 11, 2014, OneExchange sent each retiree a startup packet, and on August 12, 2014, SPX sent another letter to the members describing the health benefits changes. (Id. ¶¶44-45). On September 19, 2014, SPX received a Notice of Dispute from Plaintiffs' counsel. (Id. ¶47). Open enrollment in the individual Medicare market began on October 1, 2014. (Id. ¶49). Plaintiffs filed their Complaint in this matter on November 25, 2014, (Doc. No. 1), and then filed their Motion for Preliminary Injunction on December 15, 2015, (Doc. No. 9). With Plaintiffs' Motion being filed on December 15, 2014, the Motion did not become ripe for review until SPX filed its Response on January 5, 2015, and Plaintiffs filed their Reply on January 15, 2015, which both subsequently did. (Doc. Nos. 15, 19). SPX's changeover from the group plan to the HRA's, however, took effect on January 1, 2015, which was before SPX's Response to Plaintiffs' Motion was due. Therefore, SPX's changeover to the HRA structure, which Plaintiffs' Motion for Preliminary Injunction seeks to prevent, took effect prior to Plaintiffs' Motion becoming ripe on January 15, 2015.

In their Complaint and Motion for Preliminary Injunction, Plaintiffs allege that SPX's decision to terminate the group plan and institute the HRA structure violates the Settlement Agreements' requirement that SPX provide "substantially equivalent" benefits to the settlement members. Plaintiffs seek a preliminary injunction restraining SPX from terminating the group plan and instituting the HRA structure. Without injunctive relief, Plaintiffs contend they will "suffer severe emotional distress and irreparable harm to their health and welfare." (Doc. No. 10 at 3).

## II.  DISCUSSION

A preliminary injunction is an extraordinary remedy, the primary function of which is to

protect the status quo and to prevent irreparable harm during the pendency of a lawsuit. In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir. 2003). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 542 (1987). An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course. Weinberger v. Romero-Barcelo, 456 U.S. 305, 313 (1982) ("[A] federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law."). A preliminary injunction is to be granted only if no adequate remedy at law exists and the moving party clearly establishes the requisite entitlement. See Federal Leasing, Inc. v. Underwriters at Lloyd's, 650 F.2d 495, 499 (4th Cir. 1981).

A plaintiff seeking a preliminary injunction must establish four elements, including that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). A plaintiff must demonstrate more than just a "possibility" of irreparable harm and a strong showing of likelihood of success on the merits. Winter, 555 U.S. at 22.

A. Plaintiffs' Motion for Preliminary Injunction is moot.

Plaintiffs' Motion seeks a prohibitory injunction "restraining Defendant from terminating the current SPX Plans for Medicare eligible retirees during the pendency of this action or until further order of the Court and from implementing its 'New Approach to Retiree Health Care Coverage,' effective January 1, 2015 . . . ." (Doc. No. 9 at 3). A prohibitory preliminary injunction serves to maintain the status quo pending a final determination on the merits of a case. Pashby v. Delia, 709 F.3d 307, 319 (4th Cir. 2013). The Fourth Circuit Court of Appeals "has

defined the status quo as the 'last uncontested status between the parties which preceded the controversy.'" Id. at 320 (quoting Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 378 (4th Cir. 2012)). The last uncontested status in this case was the status as of March 2014 in which SPX provided health benefits to Plaintiffs through the group plan. SPX's changeover to the HRA structure took effect on January 1, 2015, so the March 2014 status quo had already changed by the time Plaintiffs' Motion became ripe for review on January 15, 2015. Therefore, the change that Plaintiffs sought to prohibit had already occurred. It is well-settled that a "request for an injunction to prohibit an act is rendered moot by the happening of the act." Winston v. Fed. Bureau of Prisons, No. 5:10-HC-2192-FL, 2011 WL 3664416, at *2 (E.D.N.C. Aug. 18, 2011) (citing Ry. Labor Executives Ass'n v. Chesapeake W. Ry., 915 F.2d 116, 118 (4th Cir. 1990)). Therefore, the Court finds that Plaintiffs' Motion for Preliminary Injunction is moot.

  B. <u>Plaintiffs' Motion for Preliminary Injunction also fails on the merits.</u>

  Additionally, based upon the merits, Plaintiffs are unable to meet the considerable standard required for a preliminary injunction. Because SPX has already made the changeover to the HRA structure, any injunction would have to order SPX to revert back to the group plan in order to return to the last uncontested status between the parties. Plaintiffs have not demonstrated a likelihood of success on the merits. SPX argues that there are threshold issues of jurisdiction and standing under the Labor Management Relations Act and the Employee Retirement Income Security Act as well as substantial questions regarding the appropriateness of class certification in this case. Plaintiffs have failed to address these issues or to explain how they are not fatal to Plaintiffs' claims. Those threshold issues aside, the ultimate success of Plaintiffs' claims depends on the determination of whether the HRA structure provides "substantially equivalent" health benefits. Plaintiffs have not offered sufficient probative

evidence to allow the Court to make any determination regarding the merits of their claims. Such a fact-intensive inquiry requires a much more developed evidentiary record, which will only become available through discovery. Therefore, the Court finds that Plaintiffs have failed to clearly show they are likely to succeed on the merits.

Plaintiffs have also failed to show the type of irreparable injury requiring the "extraordinary and drastic" remedy of a preliminary injunction. Munaf v. Geren, 553 U.S. 674, 689-90 (2008). Regarding irreparable injury, the Supreme Court has stated:

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

Sampson v. Murray, 415 U.S. 61, 90 (1974) (quoting Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958)). Plaintiff "must overcome the presumption that preliminary injunctions will not issue in cases where the harm suffered may be remedied by money damages at judgment." Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp., 17 F.3d 691, 693 (4th Cir. 1994). Other than conclusory statements that nothing can compensate Plaintiffs for the significant administrative burden and impediment to effective coverage, Plaintiffs have failed to offer any evidence that no adequate remedy at law exists. Were Plaintiffs to prevail on the merits, they could request both a permanent injunction at that time as well as damages in the full amount of losses up to the date of trial. Furthermore, given Plaintiffs' allegations regarding the administrative burden, it seems clear that another change to the benefits would only cause more emotional distress and harm. Therefore, the Court finds that Plaintiffs have not shown irreparable harm would result in the absence of a preliminary injunction.

Plaintiffs have also failed to clearly show that the balance of equities tips in their favor or that an injunction is in the public interest. Having examined the record and balanced the interest

of the parties, the Court finds that Plaintiffs have not established the four elements necessary to prove that a preliminary injunction is warranted. Therefore, the Court **denies** Plaintiffs' Motion on the merits.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiffs' Motion for Preliminary Injunction, (Doc. No. 9), is **DENIED**.

Signed: September 29, 2015

Robert J. Conrad, Jr.
United States District Judge