# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:14-CV-00656-RJC-DSC

| | |
|---|---|
| JOSEPH Di BIASE, JOHN PRODORUTTI and DAVID BRASS as individuals, on behalf of themselves and all persons similarly situated, and INTERNATIONALUNION, UNITED AUTOMOBILE,AEROSPACE AND AGRICULTURALIMPLEMENT WORKERS OF AMERICA,UAW, <br><br> Plaintiffs, <br><br> v. <br><br> SPX CORPORATION, <br><br> Defendant. | **ORDER** |

**THIS MATTER** comes before the Court on Plaintiff's Complaint, (Doc. No. 1), Plaintiff's Motion for Class Certification, (Doc. No. 72), Plaintiff's Memorandum in Support (Doc. No. 73), Defendant's Memorandum in Opposition, (Doc. No. 75), and Plaintiffs' Reply Brief on Motion for Class Certification (Doc. No. 77).

## I. BACKGROUND

In 2001, the United Automobile Workers ("UAW") and certain class plaintiffs litigated in the Western District of Michigan against Defendant SPX in two separate actions. (Doc. No. 1 ¶ 2). Those actions alleged a breach of promise made in collective bargaining agreements between the UAW and SPX, or its predecessor. (Id.) This litigation resulted in two settlement agreements: the L&N Settlement Agreement and the Muskegon Settlement Agreement. These agreements were approved on January 12, 2004 in <u>Di Biase et al. v. SPX Corp. et al.</u>, No. 1:01–cv–624–RAE

(W.D. Mich. 2004), and Pedler et al. v. SPX Corp., No. 1:01–cv–623–RAE (W.D. Mich. 2004). (Id. ¶ 11).

Each agreement provided settlement class members with specific retiree health care plans and benefits ("SPX Plans") "for the remainder of their lives." (Id. ¶ 26). Provisions within the settlement agreements allowed SPX to change those plans, carriers, networks, and providers under the condition that the class members' new benefits were "substantially equivalent" to the original SPX Plans. (Id. ¶ 27).

In the fall of 2014, SPX announced to the retirees its plan to terminate the participation of Medicare-eligible class members—typically those 65 or older—in the fore mentioned SPX Plans. This termination would take effect on January 1, 2015 and replace this age group's original SPX Plan with a "New Approach to Retiree Health Care Coverage" ("New Approach"). (Id. ¶ 28). The New Approach differs from the previous SPX Plan as it is a Health Reimbursement Account ("HRA"), "into which SPX places a specified sum of money each year." (Id. at ¶ 31). Unlike the prior health care plan, the New Approach requires the retiree to locate and purchase their own appropriate health insurance coverage. (Id.). The retirees may then seek reimbursement for their expenditures from the HRA until the account is exhausted. (Id.). Upon depletion of the account, the retiree becomes financially responsible for his/her medical care for the rest of the year. (Id.).

Plaintiff filed suit in this District on November 25, 2014, alleging violations of the settlement agreement arising from collective bargaining agreements (Counts I and III), and violation of the ERIA Plan (Counts II and IV). (Id. ¶ 10-12). Plaintiffs claim that "the New Approach requires the Medicare Eligible Settlement Class Members to be sufficiently capable (mentally and physically) to engage in the acquisition of information and decision making necessary to choose a new plan or plans from the many hundreds available, to 'front' the sums

necessary to pay the required premiums, and to provide certain required documentation for reimbursement to SPX's administrator of the HRA." (Id. ¶ 33). On September 2, 2016, Plaintiff filed a Motion to Certify Class, (Doc. No. 72).[1] On September 26, 2016, Defendant filed a Response in Opposition to Motion to Certify Class (Doc. No. 75) and on October 11, 2016, Plaintiff filed a Reply Brief to the Motion to Certify Class (Doc. No. 77).

## II. LEGAL STANDARD

"The district court has broad discretion in deciding whether to certify a class." Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 317 (4th Cir. 2006) (internal quotation marks omitted). In the execution of this discretion, a court must accept the substantive allegations of the complaint as true and "interpret Rule 23 in such a manner as to promote justice and judicial efficiency." Farrar & Farrar Dairy, Inc., 254 F.R.D. at 72; In re Kirschner Med. Corp. Sec. Litig., 139 F.R.D. 74, 84 (D. Md. 1991). Nonetheless, the burden of establishing certification remains with the party seeking class certification. Thorn v. Jefferson-Pilot Life Ind. Co., 445 F.3d 311,314 (4th Cir. 2006). A class "may only be certified if the trial court is satisfied, after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Gen Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982).

---

[1] Plaintiffs previously moved for a preliminary injunction in an effort to enjoin SPX from terminating the SPX Plans. (Doc. No. 9). This Court denied Plaintiffs' motion, finding the issue moot because SPX had already switched to the New Approach. (Doc. No. 31). This Court also held that the motion failed because Plaintiffs did not demonstrate a likelihood of success on the merits or that the injury claimed was one requiring the "extraordinary and drastic" remedy of a preliminary injunction. (Id. at 6–7). The Fourth Circuit subsequently affirmed this Court's decision, finding inter alia that Plaintiffs motion failed on the merits. Di Biase v. SPX Corp., No. 15-2340, 2017 U.S. App. LEXIS 18757, (4th Cir. Sept. 28, 2017).

## III. DISCUSSION

The class action is "an exception to the usual rule that litigation is conducted by and on the behalf of the individual named parties only." Comcast Corp. v. Behrend, 133 S. Ct. 1423 (2013) (citing Califano v. Yamasaski, 442 U.S. 682, 700–701 (1979)). To fall within the exception, a party seeking to maintain a class action "must affirmatively demonstrate his compliance" with Rule 23 of the Federal Rules of Civil Procedure. This rule requires a two-part test for certifying a class. First, the plaintiff must establish the four requirements under Rule 23(a):

(1) The class is so numerous that joinder of all members is impracticable;
(2) There are questions of law or fact common to the class;
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see also Gunnells v. Healthplan Servs., 348 F.3d 417, 423 (4th Cir. 2003). "These basic prerequisites are commonly referred to as numerosity, commonality, typicality, and adequacy, respectively." Farrar & Farrar Dairy, Inc., 254 F.R.D. 68, 71 (E.D.N.C. 2008). Rule 23 "does not set forth a mere pleading standard." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). Rather, plaintiffs must prove affirmatively that there are in fact sufficiently numerous parties, common questions of law or fact, etc. Id.

Second, if a plaintiff meets all of the requirements of Fed. R. Civ. P (23)(a), the putative class must show that it also fits into one of the three categories enumerated in Rule 23(b). Fed. R. Civ. P. 23(b)(3). Unless each of the prerequisites is met under Rule 23(a), a determination under Rule 23(b) is unnecessary. See Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 337 n.3 (4th Cir. 1998).

After careful consideration of the parties' arguments, the Court finds that Plaintiffs do not meet all of the prerequisites of Rule 23(a). Specifically, Plaintiffs' fail to meet the qualifications

of commonality, typicality, and adequacy. Because Plaintiffs fail these Rule 23(a) prerequisites, the Court will not assess the requirements of Rule 23(b).

A. Rule 23(a)(1) Numerosity

To fulfill the numerosity prerequisite, a class must be so large that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This prerequisite "requires examination of the specific facts of each case and imposes no absolute limitations." Gen. Tel. Co. of NW. Inc. v. Equal Emp't Opportunity Comm'n., 4446 U.S. 318 (1980). Under Rule 23, the order certifying the class must "define the class and class actions, issues, or defenses." Fed. R. Civ. P. 23(c)(1)(B). Only after a court "can readily identify the class members in reference to an objective criteria" may it then certify class. EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014). Importantly, at the time of certification, plaintiffs need not be able to identify every class member. Id. at 358.

Here, Plaintiffs propose either dividing two classes between Muskegon and Philadelphia plaintiffs or joining both the Muskegon and Philadelphia plaintiffs into a single class. (Doc. No. 73 at 10). SPX provided a list of these proposed class members in discovery. (Id.). This list, while not specifically enumerated, can readily identify the number of potential class members. The Muskegon class would include over 350 members and the Philadelphia class would include over 550. (Doc. No. 73 at 11). While no strict numerosity threshold exists, Courts have held classes of roughly 1,000 members fulfill the prerequisite. See, e.g., Soutter v. Equifax Info. Servs., LLC, 307 F.R.D. 183, 199 (E.D. Va. 2015) (noting that the defendant did not contest that numerosity was satisfied when roughly 1,000 potential class members were identified). Defendant's list identifies over 900 total potential class members. Accordingly, the Court finds Plaintiffs have met the numerosity requirement.

B. Rule 23(a)(2) Commonality

"Class certification is only proper when a determinative critical issue overshadows all other issues." Stott v. Haworth, 906 F. 2d 134, 145 (4th Cir. 1990). As such, Rule 23 requires commonality, where questions of law or fact are common between class members. Fed. R. Civ. P. 23(a)(2). This commonality prerequisite requires the plaintiff to show that the class members share both a common contention and a common injury. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349-350 (2011). A class' common contention "must be of such a nature that it is capable of class wide resolution." Id. at 350.

Despite requiring one common question, the prerequisite does not require that *all* questions of law or fact be common to all putative class members. Roger v. Electronic Data Sys. Corp., 160 F.R.D. 532, 537 (E.D. N.C. 1995). Importantly, though, commonality does require common contentions to have common answers. "What matters to class certification… is not the raising of common questions—even in droves—but rather, the capacity of a class wide proceeding to generate common *answers* apt to drive the resolution of the litigation." Walmart, 564 U.S. at 350 (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–132 (2009)) (emphasis in original). Nevertheless, a court will not deny class certification "solely because there are some factual variations among the members' grievances." Haywood v. Barnes, 109 F.R.D. 568, 577 (E.D.N.C. 1986).

Sometimes, the process of evaluating common issues requires an individual-based analysis of each member. Courts must inquire into such cases as they "will unduly burden the Court and parties and will disserve the economy rationale that renders the class action device useful." Mick v. Ravenswood Aluminum Corp., 178 F.R.D. 90, 93 (S.D. W. Va. 1998). When determining the weight of the individual issues, the court may need to examine the merits of the class of action.

Wiseman v. First Citizens Bank &Trust Co., 212 F.R.D. 482 (W.D.N.C. 2003). Therefore, a court may inquire into the merits to determine if the cause of action requires too much individual attention for a proper class action. Johnson v. HBO Film Mgmt., Inc., 265 F3d 178, 186 (3d Cir. 2001).

Here, Plaintiff's pose their common question as whether or not SPX ultimately "failed to provide the plans that are specifically described in the settlement agreement or their 'substantial equivalent' or failed to even 'provide' plans in the first place." (Doc. No. 73 at 12). Plaintiff base this question on five smaller inquiries of whether the New Approach resulted in: "(1) reduced coverage, (2) compromised treatment, (3) significant risks shifted to the retirees, (4) significant administrative burden shifted to the retirees, and in some cases (5) incidental monetary damages." (Id.). All of these questions focus on the change from the original SPX Plan described in the Settlement Agreements to the New Approach.

The Fourth Circuit has considered the juxtaposition of the commonality requirement and the need for individual inquiry. In Broussard v. Meineke Discount Muffler Shops, Inc., the court evaluated a class certification of a variety of Meineke franchisees. 155 F.3d 331 (4th Cir. 1998). There, the plaintiffs failed the commonality prerequisite. The court found too many individual questions concerning different contracts between different locations of franchisees. Id. at 340. Thus, "numerous uncommon questions" arose. Id.

Similar to Broussard, Plaintiffs have not met their burden of proving commonality. Their allegations produce a common question but not a common answer. The common question regarding the New Approach's coverage necessarily requires the individual determination of damages for each class member. This is not "easily amenable to class treatment." Id. As a HRA, the New Approach inherently involves a variety of health care plans and a combination of benefits.

The retirees were not given the same coverage. Each retiree received different group coverage based on their geography. (Doc. No. 75 at 8). Each retiree paid different out-of-pocket costs for their individual coverage. (Id.). Allowing a class action in this case would result in an intensive individual analysis of each member, resulting in a variety of answers. Such a situation defeats the purpose of class actions. See Mick, 178 F.R.S. at 93. Accordingly, Plaintiffs fail to meet the prerequisite of a Rule 23(a)(2), resulting in their ineligibility for class certification.

C. Rule 23(a)(3) Typicality

In order to meet the typicality prerequisite, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982). Representative claims must be "typical of, not identical to, the claims of the class members." Mick, 178 F.R.D. at 92. "The key typicality inquiry is whether a class representative would be required to devote considerable time to rebut Defendant's claims." Feder v. Electronic Data Systems Corp., 429 F.3d 125 (5th Cir. 2005). As such, the class certification is inapposite if a putative class representative presents distinctive defenses that may eclipse and become the center of the litigation. Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F. 2d 176. 180 (2d Cir. 1990), *cert denied* 498 U.S. 1025 (1991). "The representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." Deiter v. Microsoft Corp., 436 F.3d 461 (4th Cir. 2006).

Even if Plaintiffs satisfied commonality, concerns develop around the typicality of the class. As stated by the Supreme Court, "commonality and typicality requirements of Rule 23(a) tend to merge," and "both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim

and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Walmart, 564 U.S. at 349 n.5. Here, evidence presented concerning whether one class member's benefits are substantially equivalent will not necessary influence whether another class member's benefits are substantially equivalent. Additionally, some members may not share the same interests. In fact, with such variety of healthcare plans, some members may have *contrary* interests as they prefer the New Approach over the old SPX Plans. If class members do not share the same interests then it is illogical to presume that a class representative would be able to represent all of the varying and perhaps contrary interests with equal gusto. Although not necessary to decide given the failure to satisfy the commonality prerequisite, this class does not meet the typicality pre-requisite.

D. Rule 23(a)(4) Adequacy of Representation

The last prerequisite of Rule 23(a) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is met when: (1) the named plaintiff has interests in common with, and not antagonistic to, the Class' interests; and (2) the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation." In re Se. Hotel Props. Ltd. P'ship Inv'r Litig., 151 F.R.D. 597, 606-07 (W.D.N.C. 1993) (citations omitted). Plaintiffs fail the first prong.

In regards to the first prong of this prerequisite, the Court again emphasizes that the class members may not share a common interest with Plaintiffs. It becomes doubtful, as a result, if a representative could adequately protect all members' interest. As explained above, the New Approach may actually benefit other unnamed members of the class. Multiple circuits have held that "a class cannot be certified when its members gave opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class."

Pickett v. Iowa Beef Processors, 209 F.3d 1276, 1280 (11th Cir. 2010).  See also Langbecker v. Elec. Data Sys. Corp., 476 F.3d 299 (5th Cir. 2007).  In fact, the Fourth Circuit has gone so far as to find cases lacking opt-out rights as having "actual and potential conflicts" between members, leading to the reversal of district courts' certification of those classes.  See, e.g., Broussard, 155 F.3d at 338.  As the 11th Circuit expressed in Valley Drug Co. v. Geneva Pharm., Inc., "[t]o our knowledge, no circuit has approved of class certification where some class members derive a net economic benefit from the very same conduct alleged to be wrongful by the named representatives of the class."  350 F.3d 1181, 1190 (11th Cir. 2003).

   Plaintiffs' Motion for Class Certification alleges that even the retirees who "like" the New Approach may at the same time also be harmed by it.  (Doc. No. 73 at 20-21).  Even without parsing that allegation, it remains clear that determining whether or not retirees benefit from the New Approach would require individual inquiries.  While the retiree-by-retiree analysis destroys commonality, it may also destroy adequacy as the result of such an inquiry would likely lead to conflicting experiences under the New Approach.  The resulting conflicts would strain a class representative's ability to competently embody and respect each member's interests.  As such, Plaintiffs would not adequately protect those class members' interests.

 **IV.** **Conclusion**

   The Court finds that Plaintiffs have failed to establish the Rule 23(a) prerequisites for class certification.  Although Plaintiffs posed a common question, assessing the New Approach would necessarily require an individual analysis of each retiree.  Such an analysis would render a variety of results destroying commonality. In addition plaintiffs have failed to meet the requirements of typicality and adequacy.  Because Plaintiffs have not met the requirements of Rule 23(a), this Court need not address the requirements of 23(b).

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Certify Class, (Doc. No. 72) is **DENIED**.

Signed: September 30, 2017

Robert J. Conrad, Jr.
United States District Judge